# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

14-5146

BANNUM, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

ALSTON WILKES SOCIETY, INC.,

Defendant-Appellee,

Appeal from the United States Court of Federal Claims in case no. 14-CV-429, Judge Lynn J. Bush.

## BRIEF OF PLAINTIFF-APPELLANT BANNUM, INC.
## (NON-CONFIDENTIAL)

Joseph A. Camardo, Jr., Esq.
CAMARDO LAW FIRM, PC
127 Genesee Street
Auburn, New York 13021
Tel: (315) 252-3846
Fax: (315) 252-3508

November 26, 2014                    Attorneys for Plaintiff-Appellant

Form 9

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Bannum, Inc. _____ v. United States _____

No. 14-5146

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Bannum, Inc. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:
Bannum, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
Bannum, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
None

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
Joseph A. Camardo, Jr., Camardo Law Firm, P.C.

11/26/2014 _____        /s/ Joseph A. Camardo, Jr. _____
Date                                Signature of counsel

                                 Joseph A. Camardo, Jr. _____
                                    Printed name of counsel

Please Note: All questions must be answered
cc: Ryan Majerus, James Werner _____

**NON-CONFIDENTIAL**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................iii

**STATEMENT OF RELATED CASES** ...............................................1

**JURISDICTIONAL STATEMENT** ....................................................1

**STATEMENT OF THE ISSUES** .......................................................2

**STATEMENT OF THE CASE** ..........................................................2

**STATEMENT OF THE FACTS**.........................................................2

    **A.**    The Solicitation for RRC Services ...................................2

    **B.**    Receipt of Proposals..........................................................4

    **C.**    Specific Facts Relating to the Offerors'..........................4
        Zoning Documentation

    **D.**    Specific Facts Relating AWS's Past Performance.........7
        Submission

    **E.**    Bannum's First COFC Protest.........................................8

    **F.**    The Re-Evaluation Process ..............................................8

**SUMMARY OF THE ARGUMENT** ..................................................10

**ARGUMENT** ......................................................................................11

    **I.**    Standard of Review..........................................................11

    **II.**    The BOP Improperly Eliminated Bannum's.................13
        Original Proposal from the Competitive Range

    **III.**    The BOP's Corrective Action in the Original................15
        Protest Was Disingenuous and in Bad Faith

**NON-CONFIDENTIAL**

IV.    **AWS Did Not Comply With Solicitation** ........................18
       **Requirements Regarding Past Performance**

**CONCLUSION** ...................................................................................19

## CONFIDENTIAL MATERIAL OMITTED

The only confidential material omitted is located at pages 5 and 14 of the brief. This material relates to an aspect of the Respondent-Intervenor's proposal.

NON-CONFIDENTIAL

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

Alfa Laval Separation, Inc. v. United States ............................................15
175 F.3d 1365 (Fed.Cir.1999)

Beta Analytics Int'l, Inc. v. United States ..............................................15
44 Fed.Cl. 131 (1999)

CHE Consulting, Inc. v. United States .....................................................11
552 F.3d 1351 (Fed.Cir.2008)

DGS Contract Serv., Inc. v. United States ...............................................16
43 Fed.Cl. 227 (1999)

E.W. Bliss Co. v. United States ...............................................................19
77 F.3d 445 (Fed.Cir. 1996)

Galen Med. Assocs., Inc. v. United States ..............................................13
369 F.3d 1324 (Fed.Cir.2004)

Matter of Rockville Mailing Serv., Inc. ...................................................16
B270161.2, 96-1 CPD ¶ 184 (Comp.Gen. Apr. 10, 1996)

PAI Corp. v. United States .......................................................................11
614 F.3d 1347 (Fed.Cir.2010)

R & W Flammann GmbH v. United States ..............................................11
339 F.3d 1320 (Fed.Cir.2003)

Sheridan Corp. v. United States ..............................................................16
95 Fed.Cl. 141 (Fed.Cl. 2010)

**Statutes**

28 U.S.C. § 1295 ......................................................................................1

## Other Authority

FRAP 4 .................................................................................1

RCFC 58.1 ............................................................................1

## STATEMENT OF RELATED CASES

There have not been any other appeals related to this civil action before this or any other appellate court, and there are no cases known to counsel pending in this or any other court that will directly affect or be directly affected by this Court's decision in the instant appeal.

## JURISDICTIONAL STATEMENT

This appeal is taken from the August 15, 2014 Judgment entered by the United States Court of Federal Claims ("COFC"), case number 1:14-cv-00429-LJB. An Opinion and Order granting the Cross-Motions for Judgment on the Administrative Record by the Government and Alston Wilkes Society, Inc. ("AWS") was issued by Judge Lynn J. Bush on September 10, 2014. The Judgment is a "final judgment," and the Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. §1295(a)(3), which provides that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction...of an appeal from a final decision of the United States Court of Federal Claims." The instant appeal was timely under Rule 58.1 of the Rules of the COFC and Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, as it was taken within 60 days after receipt of the August 15, 2014 Judgment of the COFC.

**NON-CONFIDENTIAL**

## STATEMENT OF THE ISSUES

This issues in this case are: (1) Whether the BOP waived solicitation requirements with respect to the submission of zoning documentation, (2) Whether the BOP gave disparate treatment against Bannum, in favor of AWS, by eliminating Bannum for failing to timely submit zoning documentation, while requesting similar zoning documentation from AWS more than two months later, and (3) Whether the BOP's alleged corrective action in the previous protest matter was in good faith, in that the BOP knew or should have known that Bannum's Special Exception had expired, and refused to give Bannum a reasonable opportunity to correct the issue.

## STATEMENT OF THE CASE

This is an appeal from an Opinion and Order of the COFC, granting cross-motions for judgment on the administrative record by the Government and AWS, on the grounds that the BOP's decision to eliminate Bannum's proposal from the competition was proper, and entering Judgment on behalf of the Government and AWS, under Solicitation No. RFP-200-1198-SE.

## STATEMENT OF THE FACTS

### A.    The Solicitation for RRC Services

On or about January 24, 2013, the BOP issued Request for Proposals No. RFP-200-1198-SE ("RFP" or "Solicitation"), seeking a contractor to provide

Residential Reentry Center ("RRC") services for the area within Columbia, South Carolina (within Richland County) (JA 10004). Such RRC services included employment and residence development and other self-improvement opportunities to assist federal offenders during the transition from prison to the community (JA 10057).

The RFP provided that the award would be made to the offeror whose proposal was deemed the best value to the government after evaluation in accordance with the factors and subfactors in the solicitation (JA 10040). The Solicitation criteria stated that proposals would be evaluated in three areas: Past Performance, Technical/Management, and Price (JA 10046).

The RFP contained instructions regarding the content for Technical/Management proposals at Section L.6. This section states in pertinent part as follows:

> (i)    ...If not contained in the initial proposal, offerors shall provide the Contracting Officer with valid proof of all zoning and local ordinance requirements necessary for the operation of Residential Reentry Center...within 60 days after the date of the initial proposal submission. (JA 10045).

With respect to past performance, Section L.8 stated that "The past performance information must address all elements contained in the Compliance Matrix" (JA 10045).

The Compliance Matrix stated that certain past performance information shall be submitted in an offeror's proposal. Offerors were required to submit "The 5 most relevant contracts and/or subcontracts that were, or are currently being, performed in the past 3 years..." (JA 10205).

The BOP anticipating issuing an award on or before October 4, 2013 (JA 10014-15).

### B. Receipt of Proposals

Proposals were initially due on March 27, 2013 (JA 10003), but was extended to April 3, 2013 through a solicitation modification (JA 10242).

The BOP received proposals from Alston Wilkes Society, Inc. ("AWS") dated March 20, 2013 (see JA 10244) and Bannum dated March 27, 2013 (see JA 10499).

### C. Specific Facts Relating to the Offerors' Zoning Documentation

AWS, with its proposal, submitted as its zoning approval a letter dated August 15, 2011 from Columbia Senior Zoning Analyst Michael Lizewski, indicating that its proposed property was zoned C-4, DD (Central Area Commercial District, within the Design Development Overlay). The letter indicated that:

> ...Development within the –DD area must have the approval of the Design/Development Review Commission or its staff and must comply with design guidelines set forth in the Zoning Ordinance and in the publication "City Center Design/Development Guidelines, Final

4

Report, September 1, 1998," LDR International, Inc. Consultants…
(JA 10272).

The letter further noted that a certificate of occupancy was issued to AWS
for the property in February 1986. However, the letter indicated that it was not
"…a building permit, zoning permit, nor any similar authorization to occupy the
property or begin construction" (JA 10273). It further stated that "Prior to
occupying the property or initiating construction, you are required to obtain a
building permit, zoning permit, and/or any other approvals that may be necessary
in accordance with City Codes." Id.

With Bannum's proposal, it submitted a letter from Columbia Zoning
Administrator K. Brian Cook, indicating that a special exception would have to be
obtained from the Board of Zoning Appeals ("BZA") in order to operate a
residential re-entry center (JA 10511).

Based upon the proposal submission dates, AWS had until May 20, 2013 to
submit its proof of zoning, and Bannum had until May 27, 2013 to do so.

On May 8, 2013, the Source Selection Panel prepared its Consensus
Working Papers, and with respect to AWS's zoning, indicated that the letter that it
submitted was acceptable as proof of zoning (JA 10881). However, the panel
further indicated that "the offeror is ▮▮▮▮▮▮▮▮▮…and will need to
obtain permits and an updated Certificate of Occupancy." Id.

The Administrative Record provides no further zoning documentation from AWS prior to May 20, 2013.

Due to infrequent meeting dates, Bannum could not obtain the special exception before May 27, 2013.

The BOP took no action to exclude either offeror from the competitive range at that time.

On June 14, 2013, Bannum obtained a special exception for the RRC, and advised the BOP by email (see JA 10934).

The Columbia BZA issued a formal Order on June 27, 2013, approving the RRC, with a provision that the approved use must begin by December 1, 2013 (JA 10809).

Bannum immediately provided the Order to the BOP (see JA 10934).

After the BOP received Bannum's zoning approval, on July 3, 2013, the Contracting Officer emailed Residential Reentry Specialist Deborah Mann, indicating for the first time that he was considering eliminating Bannum from the competitive range for untimely submitting its zoning approval (JA 10934).

On July 9, 2013 Deborah Mann responded to the Contracting Officer, concurring that the time elapsed and that Bannum did not meet the requirements of the solicitation, despite the fact that Bannum had already submitted its zoning approval (JA 10934).

On July 12, 2013, Bannum was eliminated from the competitive range (JA 10810-11).

Two months later, on September 17, 2013, the BOP issued a discussion notice to AWS, stating that "Alston must provide a current proof of zoning letter from local officials" (JA 10924).

On September 26, 2013, AWS provided the BOP with a letter dated September 25, 2013 from Columbia Zoning Administrator K. Brian Cook, advising that AWS is permitted to continue operating as a "halfway house" under zoning regulations (JA 11289).

The 60 days for AWS to submit valid proof of zoning had long since passed, and the BOP did not eliminate AWS from the competitive range.

**D.    Specific Facts Relating to AWS's Past Performance Submission**

Despite the requirements of the solicitation (i.e. submission of the 5 most relevant contracts and/or subcontracts performed in the past 3 years), AWS only submitted one contract for past performance consideration, its incumbent Columbia contract (JA 10495-97).

The BOP RRC Directory[1] lists 3 locations which AWS currently operates, not only in Columbia, but also North Charleston, SC and Florence, SC.

---

[1] Located online at http://www.bop.gov/business/rrc_directory.jsp

**NON-CONFIDENTIAL**

AWS did not provide past performance information for either the North Charleston or Florence contracts.

### E.    Bannum's First COFC Protest

On December 30, 2013, Bannum filed a bid protest Complaint in the Court of Federal Claims (Case No. 1:13-cv-01027-LJB).

On January 22, 2014, the United States filed an Updated Notice of Corrective Action, stating that "…BOP is re-initiating the evaluation of Bannum's proposal, taking into account Bannum's zoning documentation, in preparation for a new competitive range determination" (Case No. 1:13-cv-01027-LJB, Docket No. 17).

Based upon the BOP's representations, the protest was dismissed, without prejudice, on January 30, 2014.

### F.    The Re-Evaluation Process

On January 22, 2014, the BOP notified Bannum that its proposal will be considered for award (JA 11300). The BOP indicated that the zoning submitted on June 28, 2013 will be evaluated along with its proposal (Id.).

On March 11, 2014, the Contracting Officer prepared a Competitive Range Determination, including two offerors, Bannum and AWS, in the competitive range (JA 11301-02). However, he indicated that Bannum's site validity and suitability was deficient (JA 11302).

On March 14, 2014, the Contracting Officer submitted Discussion Notice #1 to Bannum, asking two questions with respect to Bannum's zoning (JA 11306-09). First, the BOP inquired as to the reference in the Order on a Special Exception that "Residents shall be non-violent Federal offenders," seeking to ensure that Bannum could accept all offenders for placement at the facility (JA 11307). Second, the BOP sought further zoning documentation, as the Order indicated that approved use of the property must begin by December 1, 2013 (JA 11307).

Due to the expiration of the Special Exception, Bannum had sought to renew the Special Exception. However, subsequent events occurred which negatively impacted Bannum's ability to use its originally proposed site. Specifically, after the Special Exception expired, unbeknownst to Bannum, a school had moved into an adjacent property, making it impossible to renew the Special Exception for the original site (JA 11326). As such, on March 26, 2014, Bannum requested additional time from the BOP in order to negotiate a new lease or purchase a new property, affirm the zoning or apply for a Special Exception, and otherwise comply with BOP requirements so that it could submit a proposal most advantageous to the BOP (JA 11325-27).

On March 28, 2014, the BOP granted Bannum only a two-week extension, and cited to section L.6(f)(3) of the solicitation, stating that Bannum's time to request a change in its proposed facility has passed (JA 11334).

9

On April 11, 2014, Bannum responded to Discussion Notice #1, again explaining the subsequent events with respect to Bannum's original site, which were outside of Bannum's control (JA 11338-53). Bannum advised that it has located a suitable alternative site, and was in the process of obtaining a Special Exception, which was scheduled to be heard by the BZA on June 5, 2014 (JA 11340).

On April 17, 2014, the BOP prepared a new Technical/Management evaluation, and deemed Bannum deficient, stating that its proposal does not meet some of the requirements of the solicitation, specifically in regard to zoning and the inability to accept all offenders in the program, stating that the zoning appears to have expired, and zoning does not allow for placement of all offenders (JA 11432, 11453). The BOP further noted that it is unclear whether or not these issues may be resolved through discussions (JA 11432).

On April 17, 2014, the BOP notified Bannum that it was being eliminated from the Competitive Range (JA 11476-77). This left AWS as the only offeror within the Competitive Range.

## SUMMARY OF THE ARGUMENT

The Lower Court erroneously granted the Defendant's and Intervenor's Cross-Motions for Judgment on the Administrative Record. The Lower Court held that the BOP's decision to eliminate Bannum's proposal from the competition was

10

proper. However, the Lower Court's decision was erroneous, in that (1) the BOP improperly eliminated Bannum from the competitive range for an alleged failure to timely submit proof of zoning, after Bannum had already submitted such documentation, while waiting until several months later to even request proof of zoning from AWS, (2) the BOP's alleged corrective action in the original protest was disingenuous, as the BOP knew or should have known that Bannum's zoning approval had expired, and (3) AWS failed to supply adequate past performance information.

## ARGUMENT

### I.    Standard of Review

The Federal Circuit reviews the granting or denial of motions for judgment upon the administrative record *de novo*, without deference. PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed.Cir.2010); CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed.Cir.2008). "Bid Protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act...by which an agency's decision is to be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law..." R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed.Cir.2003) (internal citations and quotations omitted). The Federal Circuit is to determine whether "(1) the procurement official's decision lacked a rational basis; or (2) the

procurement procedure involved a violation of regulation or procedure." <u>Weeks Marine, Inc. v. United States</u>, 575 F.3d 1352, 1358 (Fed.Cir.2009).

With respect to competitive range determinations in negotiated procurements, such as the subject solicitation, FAR 15.306(c)(1) states as follows:

> Agencies shall evaluate all proposals in accordance with [FAR] 15.305(a), and, if discussions are to be conducted, establish the competitive range. Based on the ratings of each proposal against all evaluation criteria, the contracting officer shall establish a competitive range comprised of all of the most highly rated proposals....

When an agency establishes a Competitive Range of only one offeror, close scrutiny is required, as established in <u>L-3 Communications EOTech, Inc. v. United States</u>, 83 Fed. Cl. 643, 650 (Fed. Cl. 2008), as follows:

> This court has interpreted the language of FAR 15.306(c)(1) to require close scrutiny when an agency establishes a competitive range of only one offeror, thus allowing that offeror to modify its proposal through discussions, while denying this opportunity to other offerors. *E.g.*, <u>Int'l Outsourcing Servs., LLC v. United States</u>, 69 Fed.Cl. 40, 51 n. 12 (2005); <u>Bean Stuyvesant, L.L.C. v. United States</u>, 48 Fed.Cl. 303, 339 (2000) (citation omitted). Where, as here, the government has established a competitive range of one, the court must closely examine the reasons for eliminating all other competitors from the procurement. *See* <u>Chapman Law Firm Co. v. United States</u>, 71 Fed.Cl. 124, 132 (2006) ("Case law and common sense counsel that close scrutiny is appropriate where an agency has included only one firm in the competitive range ...."), *aff'd in relevant part sub nom.* <u>Chapman Law Firm Co. v. Greenleaf Constr. Co.</u>, 490 F.3d 934, 938 (Fed.Cir.2007).

## II.    The BOP Improperly Eliminated Bannum's Original Proposal from the Competitive Range

While the BOP took corrective action with respect to its original decision in eliminating Bannum from the competitive range, it is instructive to look back at the BOP's entire course of conduct with respect to this solicitation, as the entire history of the procurement gives a more complete picture with respect to the BOP's improper actions with respect to the procurement, as an agency's conduct prior to corrective action is relevant in order to establish a pattern of bias. <u>Galen Med. Assocs., Inc. v. United States</u>, 369 F.3d 1324, 1333 (Fed.Cir.2004).

The BOP originally eliminated Bannum from the competitive range for an alleged failure to timely submit zoning documentation.  However, the BOP waived any such alleged failure.  The BOP allowed the date for Bannum to submit its documentation pass, and took no action to eliminate Bannum from the Competitive Range at that time.  The Contracting Officer even admitted that it did not even consider eliminating Bannum from the Competitive Range until after Bannum had already continued on and submitted its zoning documentation (JA 10934).  Instead of immediately eliminating Bannum from the Competitive Range when its time to submit zoning documentation had allegedly passed, it instead allowed Bannum to expend additional time, money, and effort in attending BZA hearings and obtaining a Special Exception to operate an RRC.  It was only after Bannum had expended this additional time, money, and effort that the BOP elected to eliminate Bannum

**NON-CONFIDENTIAL**

from the Competitive Range due to an alleged failure to comply with requirements of the solicitation which had already been remedied.

Here, the BOP failed to eliminate Bannum from the Competitive Range within a reasonable time after the alleged deadline passed, and Bannum relied upon the BOP's decision to not eliminate it, by incurring additional time, money, and effort in attending BZA hearings and obtaining the necessary special exception. As such, the BOP should be estopped from eliminating Bannum from the Competitive Range for failure to timely submit proof of zoning documentation.

The BOP engaged in disparate treatment of the proposals with respect to zoning, in favor of AWS. The BOP eliminated Bannum from the Competitive Range on July 12, 2013 for an alleged failure to timely submit adequate proof of zoning. The BOP then gave AWS preferential treatment with respect to its zoning documentation. While the BOP claimed on May 8, 2013 that AWS's original zoning documentation was sufficient, it noted that AWS was ███████

███████, and that permits and an updated Certificate of Occupancy would be needed (JA 10881). Despite allegedly deeming AWS's original zoning documentation acceptable, on September 17, 2013, more than two months after Bannum was eliminated from the Competitive Range, the BOP submitted Discussion Notice #1 to AWS, stating that "Alston must provide a current proof of zoning letter from local officials" (JA 10924). AWS then submitted a proof of

zoning letter dated September 25, 2013. The BOP therefore accepted AWS's late proof of zoning documentation, more than three months after Bannum had submitted its proof of zoning documentation, and more than two months after Bannum was eliminated from the Competitive Range for not timely submitting its proof of zoning documentation.

Waiver of a mandatory requirement of the solicitation for the benefit of only one offeror invalidates a procurement decision. <u>Alfa Laval Separation, Inc. v. United States</u>, 175 F.3d 1365, 1367–68 (Fed.Cir.1999); *see also* <u>Beta Analytics Int'l, Inc. v. United States</u>, 44 Fed.Cl. 131, 138 (1999) (noting that "a procuring official [must] abide by a mandatory solicitation provision"). In requesting and allowing AWS to submit proof of zoning documentation more than two months after eliminating Bannum from the Competitive Range for failing to timely submit proof of zoning documentation is an improper waiver of solicitation requirements, invalidating any procurement decision here.

## III. The BOP's Corrective Action in the Original Protest Was Disingenuous and in Bad Faith

Next, it is important to look at the alleged corrective action taken by the BOP in the original bid protest, and to review the reasonableness of that corrective action, as well as the BOP's subsequent treatment of Bannum. In a bid protest action, where corrective action is taken, such corrective action must be reasonable under the circumstances:

In applying this standard to an agency's corrective action, contracting officers are provided "broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition." DGS Contract Serv., Inc. v. United States, 43 Fed.Cl. 227, 238 (1999) (quoting Matter of: Rockville Mailing Serv., Inc., B270161.2, 96–1 CPD ¶ 184 (Comp.Gen. Apr. 10, 1996)). Nevertheless, the chosen corrective action must be "reasonable under the circumstances." Id.

Sheridan Corp. v. United States, 95 Fed. Cl. 141, 151 (Fed. Cl. 2010). Under the Tucker Act, Court of Federal Claims has jurisdiction to provide injunctive relief with respect to the corrective action taken by a procuring agency as a result of a bid protest. Id.

When the BOP issued its Updated Notice of Corrective Action in the previous matter on January 22, 2014, indicating that it would consider Bannum's proposal as submitted, it either knew or should have known that its zoning had expired on December 1, 2013 (JA 10809). The subsequent actions taken by the BOP clearly show that it never intended to appropriately consider Bannum's proposal. After the BOP issued a Discussion Notice to Bannum with respect to the zoning information, Bannum learned and advised the BOP that subsequent events, outside of Bannum's control, precluded Bannum from using its originally-proposed site (JA 11325-26). Specifically, a school had moved in next door to its originally-proposed site, which rendered it impossible for Bannum to obtain a new/renewed Special Exception for the facility (JA 11326). Due to the circumstances outside its control, Bannum requested an extension of time so that it

16

could negotiate a new lease/purchase of a new property, affirm/obtain zoning, and otherwise comply with solicitation requirements and submit a proposal that would be most advantageous to the BOP (JA 11326).

It is important to note here that the circumstances would not have even occurred but for the BOP's improper elimination of Bannum from the Competitive Range to begin with, as discussed above. Specifically, the BOP allowed the alleged deadline for submission of proof of zoning documentation to pass, with Bannum expending additional time, money, and effort in obtaining a Special Exception from the BZA, only to subsequently eliminate Bannum from the competitive range for not submitting the documentation on time. Meanwhile, the BOP waited until more than two months after eliminating Bannum from the Competitive Range to even request current proof of zoning documentation from AWS. Had the BOP not improperly eliminated Bannum from the Competitive Range, its zoning would not have expired, and it would have been able to operate the facility as originally proposed.

However, in response to Bannum's request for an extension, the BOP gave Bannum only two weeks, knowing such a short amount of time would be impossible for Bannum to complete the necessary tasks (JA 11334). Furthermore, the BOP went even further to exclude Bannum, stating that pursuant to the terms of the solicitation, any request for a change in an offeror's proposed facility must be

received by the Contracting Officer within 60 days of the initial proposal submission, and that the time to do so has passed (JA 11334-35).

On April 11, 2014, Bannum submitted as much documentation as it could, and advised the BOP that a Special Exception for its new facility was scheduled to be heard by the BZA on June 5, 2014 (JA 11338-53). However, the BOP deemed its zoning documentation deficient (JA 11432, 11453). As a matter of fact, the BOP used the Special Exception obtained on its original facility, speculating that Bannum may not be able to accept all offenders (JA 11432). In that the original Special Exception had expired, the definition of "non-violent Federal offenders" (JA 10809) was no longer even relevant. Bannum advised that it was in the process of obtaining a new Special Exception for its new facility, and as such, the use of the previous, expired Special Exception for a site that it was no longer proposing was highly improper, and further goes to show that the BOP never truly intended to give Bannum a fair opportunity at earning the subject contract.

## IV.   AWS Did Not Comply With Solicitation Requirements Regarding Past Performance

In addition to the BOP's improper, arbitrary, and disparate treatment of Bannum's proposal, AWS failed to comply with the solicitation requirements regarding past performance proposals. The Compliance Matrix, which is incorporated into the solicitation at section L.8, requires that an offeror's proposal shall include the 5 most relevant contracts and/or subcontracts that were, or are

18

currently being, performed in the past 3 years (JA 10205). AWS only included its incumbent Columbia contract in its proposal (JA 10495-97). However, as shown on the RRC directory available at the BOP website, AWS also operates facilities in North Charleston, SC and Florence, SC. AWS did not submit those contracts for past performance purposes.

In a negotiated procurement, a proposal that fails to conform to the solicitation's material terms and conditions is technically unacceptable and ineligible for contract award. *See* E.W. Bliss Co. v. United States, 77 F.3d 445, 448 (Fed.Cir.1996) ("In negotiated procurements, a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations.").

Because AWS did not comply with the solicitation requirements, its proposal was technically unacceptable, and subject to elimination from the Competitive Range.

## CONCLUSION

Based on the foregoing, Appellant respectfully requests that the Court reverse the decision of the COFC, award judgment to Appellant, rescind all awards made by defendant, and remand the procurement back to the agency for re-issuance of the RFP.

Dated:    November 26, 2014

Respectfully submitted,

*/s/ Joseph A. Camardo, Jr.*
Joseph A. Camardo, Jr.
CAMARDO LAW FIRM, P.C.
*Attorneys for Plaintiff-Appellant*
127 Genesee Street
Auburn, New York 13021
Tel: 315-252-3846
Fax: 315-252-3508
Email: joecamardo@camardo.com

20

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief of Plaintiff-Appellant complies with the Rules of this Court in that it contains 4,179 words as calculated by the word processing system used to prepare this brief.  This is within the limit of 14,000 words set by FRAP 32(a)(7).

/s/ *Joseph A. Camardo, Jr.*
Joseph A. Camardo, Jr.

Form 30

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on | Nov 26, 2014 |
by:

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Joseph A. Camardo, Jr. |           | /s/ Joseph A. Camardo, Jr. |
Name of Counsel                       Signature of Counsel

Law Firm | Camardo Law Firm, P.C. |

Address | 127 Genesee Street |

City, State, ZIP | Auburn, New York 13021 |

Telephone Number | 315-252-3846 |

FAX Number | 315-252-3508 |

E-mail Address | joecamardo@camardo.com |

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.